UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ABASS BANGURA,

                Plaintiff,

     -against-

COUNTY OF NASSAU, NASSAU COUNTY
CORRECTIONAL CENTER, EDWARD
RILEY/SHERIFF, JOHN DOES 1-8, JOHN
DOES 9-12, NURSE JANE DOE, DR.
JAMES NEIL, all defendants are sued in the
individual and official capacities,

                Defendants.
----------------------------------------------------------X

Civil Action No. 07-2966
(DRH)(ETB)

**APPEARANCES:**

**Law Offices of Anthony J. Colleluori & Associates, PLLC**
Attorneys for Plaintiff
180 Froehlich Farm Blvd.
Woodbury, New York 11419
By:    Diane C. Petillo, Esq.

**Law Offices of Edward J. Troy**
Attorneys for Defendants Nurse Jane Doe and Dr. James Neil
44 Broadway
Greenlawn, New York 11740
By:    Alexander V. Sansone, Esq.

**Lorna B. Goodman**
**Nassau County Attorney**
Attorneys for County of Nassau, Nassau County Correctional
Center and Edward Reilly i/s/h Edward Riley/Sheriff
One West Street
Mineola, New York 11501
By:    Karen Schmidt, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Abass Bangura ("Plaintiff") commenced this action pursuant to 42 U.S.C. §

1983 alleging violations of his constitutional rights, as well as state law claims for assault and battery. Presently before the Court is a motion to dismiss by defendants County of Nassau ("the County"), Nassau County Correctional Center ("NCCC") and Edward Reilly, incorrectly sued herein as Edward Riley ("Reilly") (collectively "County Defendants") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Also before the Court is a motion for judgment on the pleadings by Nurse Jane Doe ("Nurse Doe") and Dr. James Neil ("Dr. Neil"). In opposition to the motions, Plaintiff has advised the Court that he withdraws the claims against NCCC and Dr. James Neil and accordingly, the Court dismisses the claims against these defendants.[1] For the reasons set forth below, the motion by the County and Reilly is granted in part and denied in part and the motion by Nurse Doe is granted. Furthermore, Plaintiff is granted leave to file an amended complaint within 20 days of the date hereof.

## Background

The following allegations are taken from the complaint.[2]

Prior to August 31, 2005, Plaintiff was housed at NCCC in "I" building, a juvenile facility, for a period of two weeks. During that two week period he reported to the officers on duty that he was being picked on by another juvenile inmate. The personnel at NCCC then

---

[1] Plaintiff has advised the Court that he is dismissing his claims against Nassau Health Care Corporation and Dr. Anil Kanth, neither of whom are named as defendants.
Plaintiff has also advised the Court that to the extent Nurse Jane Doe is employed by Nassau Health Care Corporation the claims against her are withdrawn but that to the extent "it is determined" that Nurse Doe is employed by the county or an independent contractor, his claims remain in full force and effect. The complaint only alleges, however, that Nurse Doe is a nurse at NCCC.

[2] Plaintiff served a proposed amended complaint with his opposition to the County Defendants' motion. However, no cross-motion seeking leave to serve the amended complaint was filed and therefore the Court shall only consider the allegation in the complaint.

transferred Plaintiff from the juvenile facility to the main jail, cellblock B4. Cellblock B4 is an adult facility. On September 1, 2005, one day after his transfer to the adult facility, Plaintiff was assaulted by John Does 1-8, while defendants John Does 9-12, the correction officers assigned to the tier, were allegedly patrolling the tier where Plaintiff was housed. After the assault Plaintiff was taken to Nurse Doe, who after a physical examination and x-rays, told Plaintiff that his jaw was not broken. Plaintiff was then returned to the same cell where the assault occurred and locked into his cell.

The following day, Plaintiff was released on bail. After his release Plaintiff was taken by family members to Nassau County Medical Center where it was determined that Plaintiff's jaw was broken in two places, necessitating wires being placed in his jaw for a period of seven weeks. Plaintiff also sustained a broken tooth, lacerations and contusions as a result of the September 1, 2005 assault; he remained at Nassau County Medical Center for three days.

Based on the foregoing, Plaintiff asserts eleven cause of action. Count One is a § 1983 claim against the County and Reilly and asserts that they deprived Plaintiff of his rights under the Fifth and Fourteenth Amendment because they "failed to instruct, supervise, control, and discipline on a continuing basis John Doe corrections offices to properly supervise inmates, regularly patrol the tiers and areas to which they are assigned." Count Two is a § 1983 due process claim asserted against all defendants and alleges that Defendants' "acts, omissions, policies and practices . . . are a substantial departure from accepted professional judgment, standards and practices, constitute punishment and reflect deliberate indifference to the known or obvious consequences to Plaintiff . . . thereby unlawfully burden[ing] Plaintiff's protected liberty interest . . . ." Count Three is a § 1983 claims against all defendants in their official capacity

alleging a violation of the cruel and unusual punishment clause of Eighth Amendment. Count Four is a § 1983 claims against the John Doe defendants in their individual capacity alleging a violation of the cruel and unusual punishment clause of Eighth Amendment. Count Five and Six are §1983 claims asserted against all defendants in their official and individual capacities respectively claiming the Defendants' acts, omissions, policies and practices violated the Fourth Amendment. Count Seven is asserted against all defendants and is entitled "Violation of the Eighth and Fourteenth Amendments Totality of Condition Affecting Physical Health." Count Eight alleges a violation of the Eighth and Fourteenth Amendments in that Plaintiff was denied timely access to medical care. Count Nine and Ten assert causes of action for assault and battery respectively against John Does 1-8. Count Eleven asserts a claim for intentional infliction of emotional distress against all defendants.

## Discussion

### I. Legal Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The standard for a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard for a motion to dismiss pursuant to Rule 12(b)(6). *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998). The Supreme Court recently clarified the pleading standard applicable in evaluating a motions to dismiss under Rule 12(b)(6). In *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Id.* at 45-46. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974)). Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007). As always, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the

allegations on the face of the complaint, and may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint") (internal quotation marks omitted).

## II. The County Defendants' Motion

County Defendants move for judgment on the pleadings for the following reasons. First, the claims against the County should be dismissed because Plaintiff has failed to adequately plead the existence of a Nassau County policy or practice which led to a violation of his Constitutional rights. Second, the claims against Reilly should be dismissed because Plaintiff has not alleged the personal involvement of Reilly and the claims against Reilly in his official capacity are duplicative of his claims against the County. Finally, with respect to the state law claims, the Court should decline to exercise jurisdiction over the pendent state claims and Plaintiff failed to affirmatively plead compliance with the provisions of New York General Municipal Law §§ 50-e and 50-i. The Court shall address these arguments ad seriatem.

### A. Claims Against the County

Section 1983 provides in pertinent part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.

A municipality cannot be held liable under §1983 on a respondeat superior theory of liability for its employees' torts. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through official decision making channels." *Id.* at 690-91. Accordingly, in order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *Id.*; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The existence of a municipal policy or custom, may be plead in any of four ways. A plaintiff may allege

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

*Bonds v. Suffolk County Sheriff's Dept.*, 2006 U.S. Dist. Lexis 93607, at * 5 (E.D.N.Y. Dec. 5, 2006) (internal quotations and citations omitted).

Addressing first Plaintiff's causes of action arising out of the assault, the Court finds that the complaint adequately plead a claim for *Monell* liability. As alleged in the complaint, the County "failed to instruct, supervise, control, and discipline on a continuing basis" corrections officers in the performance of their duties to properly supervise inmates and regularly patrol the tiers/areas to which they were assigned and to segregate adult inmates from those underage. Allegations of county officials' inattention to or knowing acquiescence in misconduct by law enforcement personnel are sufficient to allege municipal liability. *See, e.g., Hall v. Marshall*, 479 F. Supp. 2d 304, 316 (E.D.N.Y. 2007); *Nesbitt v. County of Nassau*, 2006 WL 3511377, *4 (E.D.N.Y. Dec. 6, 2006); *see also Reynolds v. Guiliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."). While a single incident alleged in a complaint generally may not suffice to show a municipal policy or custom, *see Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), here it is alleged that the County failed "on a continuing basis" to supervise, control and discipline corrections officers and their duty to patrol the areas to which they were assigned. *Cf. McCrary v. County of Nassau*, 493 F. Supp.2d 581, 590 (E.D.N.Y. 2007). Whether Plaintiff shall be able to prove such a policy is a question which must be left for another day.

However, insofar as Plaintiff seeks to recover for the "denial of timely access to medical care" (Count VIII), the claim against the County must be dismissed. There are simply no allegations to support the imposition of liability on the County for the medical care given to Plaintiff at NCCC. For example, Plaintiff does not allege any facts which would suggest that the

County was deliberately indifferent to its medical employees' training needs nor does he reference the existence of a widespread policy to deny inmates and/or detainees adequate medical care. *See Mitchell v. Prison Health Services Inc.*, 2008 WL 5069075 (S.D.N.Y. Nov. 20, 2008). In addition, as discussed *infra*, the allegations are insufficient to support a constitutional violation. To the extent Plaintiff can, consistent with Rule 11, remedy these pleading defects, he may seek leave to file an amended complaint.

    B. <u>Claims against Reilly</u>

County Defendants maintain that the claims against Reilly must be dismissed for two reasons. First, Plaintiff has failed to allege Reilly's personal involvement in the alleged violation of his Constitutional Rights. Second, the claims against Reilly in his official capacity must be dismissed as duplicative of the claims against the Count.

        1. Personal Involvement

It is well settled that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995). Thus, "[t]he rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Id.* (citation and internal quotation omitted).

Here, the Complaint alleges that Reilly, as the sheriff of NCCC "was responsible for the control, governing, administration, disposition, and discipline of the county correctional staff, as well as the inmates [t]herein" as well as "responsible for the safety of each individual inmate." (Compl. ¶¶ 20-21.) It further alleges that Reilly failed to "instruct, supervise, control an

discipline on a continuing basis" the corrections officers in the performance of their duties to properly supervise the inmates, regularly patrol the tiers/areas to which they were assigned and segregate adult inmates from those underage, resulting in the deprivation of Plaintiff's constitutional rights. (*See id.* ¶ 43-44, 47, 51,54, 59.)

On its face, the pleading clearly fails to allege that Reilly was directly involved in the alleged unlawful conduct. However, the Second Circuit has recognized that a defendant who occupies a supervisory position may be found personally involved in the deprivation of a plaintiff's constitutionally protected liberty interests in several ways:

> The defendant may have directly participated in the infraction. . . . A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. . . . A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. . . . Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event. . . . In addition, supervisory liability may be imposed where an official demonstrates "gross negligence" or "deliberate indifference " to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place.

*Wright*, 21 F.3d at 501 (citations omitted); *see also Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996) (A defendant in a § 1983 action may not be held liable unless there is a showing of personal involvement, *i.e.*, direct participation or failure to remedy the alleged wrong after learning of it or creation of a policy or custom under which unconstitutional practices occurred); *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (same).

The Court finds that Plaintiff's allegations against Reilly, while hardly plentiful, are sufficient with respect to the assault to survive the instant motion to dismiss, and indeed, may be

10

all that is possible at the pleading stage. In analyzing whether Plaintiff's allegations can withstand the instant motion, the Court is guided by the Second Circuit's decision in *Iqbal*. In that case, the Circuit found that plaintiff's allegations that the warden knew or should have known of the detention centers' practice of beating detainees and that the warden was deliberately indifferent in failing to take action to curtail the beatings were sufficient to state a claim of supervisory liability for the use of excessive force against plaintiff. 490 F.3d at 170. The Court explained as follows:

> The plausibility standard requires no subsidiary facts at the pleading stage to support an allegation of [the warden's] knowledge because it is at least plausible that a warden would know of mistreatment inflicted by those under his command. Whether such knowledge can be proven must await further proceedings.

*Id.*

The Court is also cognizant of the Second Circuit's admonition against dismissing claims against supervisors at this early stage in the litigation:

> After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case, but such dismissal is premature where the opportunity to identify those involved has not yet been accorded. Indeed, in some instances, their identification might produce evidence from them that they acted at the supervisor's instruction, thus putting in issue the supervisor's denial of personal involvement. In this case, [plaintiff] was afforded an opportunity for discovery, and he simply failed to realize until after the summary judgment motion was filed that he had failed to name the appropriate defendant(s). Nonetheless, his failure is understandable under the circumstances. Though a court need not act as an advocate for pro se litigants, in pro se cases there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done. We therefore hold that when a pro se

> plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery.

*Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998) (citations and internal quotation marks omitted).

In light of the Second Circuit's directive in *Davis*, the Court need not consider at this stage whether Plaintiff will ultimately succeed in proving the personal involvement of Reilly vis a vis the claims arising out of the assault, but only whether he has made sufficient allegations to withstand Defendants' motion to dismiss. The Court finds the allegations sufficient.

The claim for the denial of access to medical care, however, stands on a different footing. Not only is there an absence of facts to support Reilly's personal involvement under *Wright*, 21 F.3d at 501, but, as discussed *infra*, the facts are insufficient to allege a constitutional violation.

The motion for judgment on the pleadings for Reilly's lack of personal involvement is granted as to Count VIII but otherwise denied

### 2. Official Capacity

To the extent that Reilly is sued in his official capacity, the claims are duplicative of that against the County. *Kentucky v. Graham*, 473 U.S. 159 (1985). Accordingly, the motion to dismiss the claims against Reilly is his official capacity is granted. *See Crews v. County of Nassau,* 2007 U.S. Dist. LEXIS 94597, *2 n.1 (E.D.N.Y. Dec. 27, 2007); *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003).

### C. State Law Claim

County Defendants seeks dismissal of Plaintiff's state law claim for intentional infliction

of emotional dismiss. It is argued that the Court should decline to exercise pendent jurisdiction over it. However, the declination of supplemental jurisdiction is premised upon the dismissal of all federal claims. Inasmuch as the Court has not dismissed all the federal claims against the County Defendants, the motion to dismiss on this ground is denied.

It is also argued that the state claim against the County Defendants should be dismissed for failure to plead compliance with the notice of claim provisions of New York General Municipal law §§ 50-e and 50-i. These provisions require that a party asserting a state law claim against a municipality or its employees acting within the scope of their employment must file a notice of claim prior to commencement of an action against a municipality, and must serve the notice of claim within ninety (90) days after the claim arises. N.Y. Gen. Mun. Law § 50-e. It is well settled that compliance with these provisions is a condition precedent to commencement of an action against a municipality. *See, e.g., P.J. Panzeca, Inc. v. Bd. of Educ., Union Free Sch. Dist. No. 6,* 29 N.Y.2d 508 (1971). The burden is on the plaintiff to plead and prove compliance with the requirements of New York General Municipal Law 50-e and 50-i. *Febres v. City of New York*, 238 F.R.D. 377, 392-93 (S.D.N.Y. 2006); *Panzeca,* 28 N.Y.2d at 508; *Stoetzel v. Wappingers Cent. Sch. Dist.*, 166 A.D.2d 643, 644 (2d Dept. 1990).

There is no dispute that a notice of claim was required for the claim for the intentional infliction of emotional harm. Indeed, Plaintiff advises the Court that, in fact, a notice of claim was served. Accordingly, the Court shall grant the motion to dismiss but shall also grant Plaintiff leave to file an amended complaint to remedy his pleading oversight.

### III. Nurse Doe's Motion

Nurse Doe has moved for judgment on the pleadings asserting that the facts alleged fail to

support a claim for deliberate indifference to a serious medical need. The Court agrees.

Claims by a pretrial detainee that he was denied adequate medical care are examined under the Due Process Clause of the Fourteenth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). The Due Process analysis for a pretrial detainee is, however, the same as the Eighth Amendment analysis for a convicted prisoner. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *Mitchell v. Prison Health Services, Inc.*, 2008 WL 5069075 (S.D.N.Y. Nov. 20, 2008). "[A]n unconvicted detainee's rights are at least as great as those of a convicted prisoner," and defendants may be found liable if they "denied treatment needed to remedy a serious medical condition and did so because of [] deliberate indifference to that need." *Weyant*, 101 F.3d at 856.

The deliberate indifference standard contains both an objective and subjective component. *See Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005).

> To establish a[] violation . . . arising out of inadequate medical treatment, a prisoner must prove deliberate indifference to [his] serious medical needs. A prisoner must satisfy two requirements-one objective and one subjective-in order to prevail on such a deliberate indifference claim. First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, sufficiently serious-that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain. Second, the prisoner must prove that the charged official acted with a sufficiently culpable state of mind[.] This requires that the prisoner prove that the charged official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that s substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (citations and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 279-81 (2d Cir. 2006). Here, even liberally construed, the complaint fails to alleges both the

objective and subjective elements of the deliberate indifference standard.

According to the allegations of the complaint, after the assault the Plaintiff was taken to see Nurse Doe who, after examining him and taking x-rays, told him his jaw was not broken. It was not until after Plaintiff was released from NCCC on September 2, 2005 that "Plaintiff began feeling pain and swelling in his jaw . . . ." (Comp. ¶ 33.) The complaint fails to allege that Nurse Doe acted with the requisite state of mind. Indeed, the allegations that Nurse Doe negligently and recklessly failed (1) to properly diagnose and treat, (2) to perform all appropriate tests, and (3) to take proper x-rays and to properly read the x-rays that were taken (Compl. ¶ 43), at best, state a claim for medical malpractice. Allegations of negligent diagnosis or treatment do not state a cause of action for deliberate indifference to a medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Accordingly, the motion to dismiss of Nurse Doe is granted. To the extent Plaintiff can, consistent with Rule 11, remedy these pleading defects, he may seek leave to file an amended complaint.

Nurse Doe's motion is addressed solely to the claim for deliberate indifference to a serious medical need, to wit Count VIII. The Court notes, however, that Counts II through VII, which deal with the Plaintiff's transfer to an adult cellblock and the subsequent assault purport to be asserted against all defendants. Nonetheless, inasmuch as there are no allegations relevant to Nurse Doe for these Counts, they are dismissed as well.

**Conclusion**

For the reasons set forth above, the motions for judgment on the pleading are determined as follows: all claims against Nassau County Correctional Center, Dr. James Neil and Nurse Jane Doe are dismissed; Count VIII is dismissed as against the County of Nassau and Edward Reilly

15

(incorrectly sued herein as Edward Riley); all claims against Edward Reilly in his official capacity are dismissed; Count XI is dismissed unless within 20 days of the date hereof Plaintiff files an amended complaint asserting compliance with New York General Municipal Law §§ 50-e and 50-i.

**SO ORDERED.**

Dated: Central Islip, New York
January 7, 2009

/s/
Denis R. Hurley
Senior District Judge